# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HITS BEFORE FAME, LLC )
901 New Jersey Ave., N.W., #518 )
Washington, DC. 20001 )
)
    and )
)
AFTER HOURS, LLC )
9221 W Stayman Drive )
Ellicott City, MD 21042, )
)
      Plaintiffs, )
)
    v. )      Civil Action No.
)
DANIEL HERNANDEZ )
pka "TEKASHI 6IX9INE" )
1650 Broadway, #505 )
New York, NY 10019, )
)
KIFANO JORDAN )
pka "SHOTTIE" )
10 Bawta Place, Suite 114 )
Hackensack, NJ 07601, )
)
MTA BOOKING INC, )
4300 W Lake Mary Blvd )
Suite 1010-32 )
Lake Mary, FL 32746, )
)
    Serve:  Stephen Ferguson )
           4300 W. Lake Mary Blvd. )
           Suite 1010-324 )
           Lake Mary, FL 32746 )
           REGISTERED AGENT )
)
1ST CALL ENTERTAINMENT, LLC )
414 Tiffany Lane )
Bristol, CT 06010, )
)
    Serve:  William Cornish )
           414 Tiffany Lane )
           Bristol, CT 06010 )
           REGISTERED AGENT )

1

| | |
|---|---|
| WILLIAM CORNISH | ) |
| 414 Tiffany Lane | ) |
| Bristol, CT 06010, | ) |
| | ) |
| SUPERS WHEREHOUSE, INC | ) |
| 929 Schenectady Ave | ) |
| Brooklyn, NY 11203, | ) |
| | ) |
|     Serve:  Christian Ehigiator | ) |
|         929 Schenectady Ave | ) |
|         Brooklyn, NY 11203 | ) |
| | ) |
| CHRISTIAN EHIGIATOR | ) |
| 929 Schenectady Ave | ) |
| Brooklyn, NY 11203, | ) |
| | ) |
|            Defendants. | ) |
| | ) |

## COMPLAINT FOR DAMAGES

**COME NOW THE PLAINTIFFS**, Benhur A. Tesfalidet and Anton Alexander, by and through undersigned counsel, to hereby file this Complaint for Damages against the Defendants Daniel Hernandez, Kifano Jordan pka "Shottie", MTA Booking, Inc., 1st Call Entertainment, LLC, William Cornish, Supers Wherehouse Inc., and Christian Ehigiator for, *inter alia*, breach of contract, conversion, unjust enrichment, fraud, defamation, and promissory estoppel arising from the Defendants' actions as described herein.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1332(a)(1), in that the amount of controversy exceeds $75,000.00 and there is complete diversity of citizenship in that the Plaintiffs are both domiciled in the District of Columbia while the none of the Defendants are domiciled in the District of Columbia but rather in the states of New York, New Jersey, Connecticut and Florida.

2

2.   This Court has personal jurisdiction over all of the named Defendants under the long-arm statute of the District of Columbia in that each Defendant transacted business in the District of Columbia and/or contracted to supply services, to wit, a live performance by Defendant Hernandez, in the District of Columbia as specified in the following paragraphs of this complaint.

3.   Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because a substantial part of the wrongful conduct complained of herein occurred in the District of Columbia.

### THE PARTIES

4.   The Plaintiff Hits Before Fame, LLC, is a District of Columbia limited liability company, which, in the normal course of business, and at all times relevant hereto, has engaged recording artists and other musical performers for the purposes of staging live performances.

5.   The Plaintiff After Hours, LLC, is a District of Columbia limited liability company, which in the normal course of business, and at all times relevant hereto, has engaged recording artists and other musical performers for the purposes of staging live performances and has promoted events on behalf of investors and other event promoters.

6.   The Defendant Daniel Hernandez, hereinafter referred to as Defendant Hernandez, a domiciliary of the State of New York, is a recording artist and musical performer who records and performs under the professional name of "Teka$hi 6ix9ine".

7.   The Defendant Kifano Jordan, hereinafter referred to as Defendant Jordan, a domiciliary of the State of New Jersey, is an individual who holds himself out to the public by the professional name "Shottie" and who, at all times pertinent hereto, presented himself as a member of Defendant Hernandez's management team and an agent of Defendant Hernandez.

8.   The Defendant MTA Booking, Inc., hereinafter referred to as Defendant MTA, is

a Florida for-profit corporation which is engaged in the business of talent management and which, at all times pertinent hereto, held itself out as the, or a, booking agent for Defendant Hernandez.

9.   The Defendant 1st Call Entertainment, LLC, hereinafter referred to as Defendant 1st Call, is a Connecticut Limited Liability Company which is engaged in the business of talent management and which, at various times pertinent hereto, held itself out as an agent for Defendant Hernandez.

10. The Defendant William Cornish, hereinafter referred to as Defendant Cornish, is a domiciliary of the State of Connecticut who, at various times pertinent hereto, held himself out as an agent of Defendant Hernandez both personally and in his capacity as a principal of Defendant 1st Call.

11. The Defendant Supers Wherehouse, Inc., hereinafter referred to as Defendant Supers is a New York for-profit corporation which, at various times pertinent hereto, received funds tendered by the Plaintiffs to secure the services of Defendant Hernandez in furtherance of the contract at issue in the instant matter.

12. The Defendant Christian Ehigiator, hereinafter referred to as Defendant Ehigiator, is a domiciliary of the State of New York who, at various times pertinent hereto, held himself out to be an agent or manager of Defendant Hernandez both personally and in his capacity as a principal of Defendant Supers.

**FACTS COMMON TO ALL COUNTS**

13. Benhur Tesfalidet, hereinafter referred to as Mr. Tesfalidet, is, and at all times pertinent hereto has been the principal and managing member of the Plaintiff Hits Before Fame, LLC.

14. Anton Alexander, hereinafter referred to as Mr. Alexander, is, and at all times pertinent hereto has been the principal and managing member of the Plaintiff After Hours, LLC.

15. To the best of the Plaintiffs' knowledge, information and belief, Stephen Ferguson, hereinafter referred to as Mr. Ferguson, and Tashea Ferguson (also known as Tasea Ferguson) , hereinafter referred to as Mrs. Ferguson, are and at all times pertinent hereto have been the primary shareholders and managing directors of Defendant MTA.

16. On October 25, 2017, Mr. Tesfalidet contacted Defendant Ehigiator to engage Defendant Hernandez for a live performance to be delivered on December 8, 2017 in Washington, D.C. at Bliss Nightclub, located at 2122 24th Pl NE, Washington, D.C., a performance hereinafter referred to as "the Event".

17. On October 28, 2017, the Plaintiff Hits Before Fame, LLC, by and through Mr. Tesfalidet, deposited by wire transfer $3,500.00, a fifty-percent deposit per standard industry practice, into Defendant Supers' account to secure the performance date.

18. Sometime thereafter, due to rescheduling on the part of Bliss Nightclub and other factors which both parties mutually understood, the Plaintiff Hits Before Fame, LLC, by and through Mr. Tesfalidet, agreed with Defendant Ehigiator to reschedule the Washington, D.C. performance.

19. During this time, the Plaintiff Hits Before Fame, LLC, by and through Mr. Tesfalidet, continued to engage Defendant Hernandez, by and through Defendant Ehigiator, for performances in other jurisdictions, including a performance on December 9, 2017, in Miami, FL.

20. After discussing the reschedule terms with Mr. Tesfalidet, Defendant Ehigiator

directed Mr. Tesfalidet to Defendant Cornish, Defendant Hernandez's agent and Chief Operating Officer of Defendant 1st Call.

21. On February 12, 2018, Defendant Cornish prepared an agreement between the Plaintiff Hits Before Fame, LLC, and Defendant Hernandez (hereinafter referred to as "the Agreement") for a live performance featuring Defendant Hernandez on March 23, 2018, at Echostage located at 2135 Queens Chapel Road, N.E., Washington, DC 20018, for the sum of $20,000.00.

22. The Agreement was fully executed on February 14, 2018.  A copy thereof is attached hereto as **Exhibit A**.

23. Defendant Cornish endorsed the Agreement as directed by Defendant Ehigiator in an email sent on February 14, 2018, attached hereto as **Exhibit B**.

24. On February 12, 2018, pursuant to the Agreement, a deposit in the amount of $10,000.00 was wired to Defendant Supers, on behalf of the Plaintiff Hits Before Fame, LLC, as evidenced by the receipt attached hereto as **Exhibit C**.

25. On or about February 13, 2018, Mr. Tesfalidet, on behalf of the Plaintiff Hits Before Fame, LLC, engaged the Plaintiff After Hours, LLC, to assist with the planning and execution of the Event.

26. Mr. Alexander, on behalf of his company, the Plaintiff After Hours, LLC and Mr. Tesfalidet's company, the Plaintiff After Hours, LLC, hereinafter referred to collectively as "the Plaintiffs", negotiated with the proprietors of Echostage to secure a date for the Event.

27. Mr. Alexander, on behalf of the Plaintiffs, also assumed the tasks of promoting and marketing the Event.

6

28. Due to lack of promotion by Defendant Hernandez, as well as fear for his safety and that of the attendees due to numerous highly publicized street beefs leading up to the Event, Echostage chose to place Hernandez's performance on hold.

29. After several months and extensive attempts to coordinate another date for the Event with Defendants Hernandez, Ehigiator, and Cornish, Mr. Tesfalidet was able to secure the reschedule date of October 28, 2018.

30. The new date was selected in part because the end of October was an ideal time for a concert since it was the time for Howard University's homecoming which could reasonably be expected to bring an influx of potential concertgoers to the District of Columbia and would give the time and the opportunity to generate greater ticket sales than any other time of year.

31. As a condition precedent to final confirmation of the new date for the Event, Defendant Hernandez, by and through his agents, demanded and the Plaintiffs agreed to increase Defendant Hernandez's fee to $60,000.00.

32. On September 2, 2018, Defendant Jordan and Mr. Tesfalidet coordinated and confirmed the delivery of an additional $44,970.00 in cash from the Plaintiffs, by and through Mr. Tesfalidet, to Defendant Jordan, and confirming that all but $1,530.00 of Defendant Hernandez's performance fee had been paid in full, in text messages, a printout of which is attached hereto as **Exhibit D.**

33. On September 14, 2018, Mr. Tesfalidet executed an agreement on behalf of the Plaintiffs with Mr. Andre de Moya, Managing Partner of Echostage, whereby the Plaintiffs agreed to pay the sum of $25,000.00 to Echostage to reserve the date of October 28, 2018, for the Event.

34. The Plaintiffs expended $11,497.10 in online promotion of the event, as detailed in records attached hereto as **Exhibit E**.

35. To the best of the Plaintiffs' knowledge, information and belief, sometime after the execution of the Agreement, Defendant Cornish and Defendant Ehigiator were both fired by Defendant Hernandez who hired Defendant MTA as his new agent and/or manager.

36. On October 11, 2018, Defendant MTA, without cause, right or justification, threatened to cancel the Event.  Attached hereto, as **Exhibit F**, is Mr. Alexander's response on behalf of the Plaintiffs transmitted by e-mail on that same day.

37. On or about October 13, 2018, Defendant Hernandez recorded a promotional video in which he acknowledged the rescheduled Event as a "make-up date for the Howard homecoming".  The transcript of the audio is attached as **Exhibit G**.

38. The promotional video was emailed to Mr. Alexander, Mr. Tesfalidet, Mr. de Moya, Defendant Ehigiator, Defendant Cornish and a Mr. Jeremy Weiss by Mr. Ferguson on October 13, 2018 in an email message which also inquired as to whether Mr. Alexander had purchased a hotel room for Mr. Ferguson's use, a copy of which is attached hereto as **Exhibit H**.

39. In the months between the Plaintiffs' original engagement of Defendant Hernandez and the date of the Event, Mr. Tesfalidet separately, and successfully, engaged Defendant Hernandez for three other live appearances and/or performances in other jurisdictions with the assistance of Defendant Ehigiator, Defendant Hernandez' publishing company Tekashi Publishing Inc., Defendant MTA, Defendant Cornish and others.

40. According to reports from the day of the Event, October 28, 2018, 3,108 tickets, representing 69% of ticket capacity, were pre-sold for a total of $165,336.00.  See

**Exhibit I** attached hereto.

41. Also, according to reports from the day of the Event, October 28, 2018, $30,300.00 was generated in presold VIP tables, a number to be applied to bar sales pursuant to the Echostage agreement.  See **Exhibit J**, attached hereto.

42. Mr. Alexander, on behalf of the Plaintiffs, engaged a recording artist, publicly known as, "Rico Nasty", as an opening act whom he paid $8,500.00 for the purposes of increasing the Event's marketing appeal.

43. Mr. Alexander, also on behalf of the Plaintiffs, engaged three other recording artists as opening acts, namely, Louis Machado, pka "Louie Bagz", Adrien Stinger, and Victor Njomo, pka "Krown Vic", for whose services the Plaintiffs paid $3,000.00, $5,000.00, and $3,000.00 USD, respectively.

44. On October 27, 2018, at 2:01 pm, Mr. Tesfalidet corresponded with Mrs. Ferguson via text and telephone call in regard to hotel accommodations for Defendant Hernandez.  A copy of the text message is attached as the first two pages of **Exhibit K**.

45. October 27, 2018, at 7:25 p.m., Mrs. Tesfalidet requested that Mr. Ferguson direct Defendant Hernandez to upload an Instagram post of a promotional flyer for the Event because even though Defendant Hernandez had recorded a promotional video at the direction of Defendant MTA, to that point Defendant Hernandez had not yet posted any promotional materials to his social media accounts or otherwise promoted the Event. (See the third page of **Exhibit K**.)

46. Mrs. Ferguson did not respond to Mr. Tesfalidet's request and Defendant Hernandez did not post the flyer.

47.    Based on Defendant Hernandez's promotional video, previous successful

engagements and the ongoing collaborative organization of logistics, the Plaintiffs continued to operate under the reasonable assumption that Defendant Hernandez would honor the Agreement as promised.

48. On the date of the Event, October 28, 2018, Mr. Tesfalidet again contacted Mrs. Ferguson, as the primary point of contact, and Mrs. Ferguson informed Mr. Tesfalidet that she had directed Defendant Hernandez to post the flyer via text message. (See the fourth page of **Exhibit K**.)

49. After the text message referred to in the preceding paragraph of this complaint, Mrs. Ferguson and Defendant Jordan abruptly stopped taking phone calls from the Plaintiffs until, at 6:30 PM, and after several missed calls, Mrs. Ferguson told Mr. Tesfalidet that she was speaking with Defendant Hernandez's security in regard to Event logistics.  (See the eighth page of **Exhibit K**.)

50. Mr. Tesfalidet was unable to get a definitive response on Defendant Hernandez's arrival time, set time, or meet and greet schedule.

51. Mrs. Ferguson then claimed that neither she nor Defendant Jordan was able to reach Defendant Hernandez.

52. Defendant Hernandez was simultaneously seen online at home doing an Instagram interview with the online blog, the Shaderoom.

53. Eager would-be attendees of the Event arrived at Echostage as early as noon on October 28, 2018. The line grew to nearly one thousand people who had chosen to arrive early, willing to withstand the intermittent rain and cold temperatures of that day.

54. Social media posts on October 28, 2018, told of the many attendees who'd planned to attend for months, either as the ending to their Howard homecoming celebrations,

Halloween celebrations, or simply as devoted fans of Defendant Hernandez, and had stood in line for several hours. Selected examples are attached as **Exhibit L**.

55. Defendant Hernandez's impending presence at Echostage was more exciting than the average concert in that it was charged with the excitement of his fans, his nationality and its current resurgence in hip-hop at-large, his notoriety in the media, and his success in a court hearing, winning his freedom two days before the Event.  These factors played into the ticketed success of the Event and set the stage for what was due to be one of the most lucrative events to date for the Plaintiffs.

56. As the evening continued, the Plaintiffs, by and though their principals Messrs. Tesfalidet and Alexander, continued to attempt to contact Mrs. Ferguson and Defendant Jordan in regard to Defendant Hernandez's arrival and performance time, offering alternative means of transportation, considering the remaining time before the Event, such as a private jet or train.

57. Mrs. Ferguson continued to claim that neither she nor Defendant Jordan could contact Defendant Hernandez as she selectively answered calls and texts from Messrs. Tesfalidet and Alexander.

58. Upon description of the line and attendance predictions, Mrs. Ferguson asked that Mr. Tesfalidet send her a video of the line so that she could send it to Defendant Jordan in efforts to spur Defendant Hernandez to respond.

59. Mr. Tesfalidet sent a video of the attendees in line to Mrs. Ferguson but received no response to calls or texts for about thirty minutes. (See the ninth and tenth pages of **Exhibit K**.)

60. As the line continued to grow, reaching the streetlight on Bladensburg Rd NE and

turning the corner, several additional police officers and transport vehicles arrived on the scene at the behest of Mr. de Moya.

61. Around 7:00 p.m., Mr. Tesfalidet spoke to Mrs. Ferguson via phone and text, informing her that Echostage would cancel the Event if he could not provide definite evidence of Defendant Hernandez's estimated time of arrival and that Echostage was considering filing suit against the Plaintiffs.

62. Subsequent to the 7:00 p.m. call referred to in the preceding paragraph of this complaint, Mrs. Ferguson again asserted that Defendant Jordan was unable to reach Defendant Hernandez and directed Mr. Tesfalidet to draft a demand letter based on Defendant Hernandez' anticipated breach of contract.  Copies of the text messages are attached hereto as pages eight through eleven of **Exhibit K**.

63.  At 7:30 p.m., fearing that the crowd outside Echostage, which was chanting for Defendant Hernandez to appear, was about to riot, Mr. de Moya was forced to cancel the Event a half hour before the doors were scheduled to open at 8:00 p.m.

64. When the Event was cancelled, the Plaintiffs were forced to turn away 3,108 customers, including more than 2,100 who had previously bought tickets and nearly one thousand who were already standing in line to purchase tickets outside Echostage.

65. Because of the abrupt cancelation referred to in the preceding paragraph of this complaint, the Plaintiffs were forced to refund $165,336.00 in pre-sold ticket proceeds and $30,300.00 in VIP table proceeds.

66. The cancellation of the Event led to a litany of negative comments and threats via social media and text messages aimed at the Plaintiffs and their principals, Mr. Tesfalidet and Mr. Alexander. A small cross-section of comments are attached hereto as **Exhibit M**.

67. Mr. Alexander's Instagram account, "DMVEvents", was the source of much of the online promotion of the Event, garnering as much as 131,964 views from its 49,700 followers on a single post related to the Event.

68.   On the same night, shortly after the cancellation of the Event, Defendant Hernandez appeared, and performed, at Powerhouse NJ, a WWPR-FM event held at the Prudential Center in Newark, New Jersey.

69. To the best of the Plaintiffs' knowledge, information and belief, Defendant Hernandez personally planned this appearance with WWPR-FM personnel with the assistance of MTA Booking, Inc., his agency at the time.

70. Defendant Hernandez's performance at Powerhouse NJ led to increased negative social media commentary, additional threats, and trolling of Mr. Tesfalidet, Mr. Alexander and Echostage's social media accounts.

71. Mr. Alexander noticed diminished sales rates on other Events he is currently marketing which are to be held at Echostage.

72. Defendant Hernandez, in an Instagram post and in a livestream video defamed the Plaintiffs and their principals, Messrs. Tesfalidet and Alexander, denigrating their business acumen, their common-sense, and their trustworthiness as promoters.  The transcript of that video is attached hereto as **Exhibit N**.

73. Defendant Hernandez's defamatory statements included statements to the effect that the Plaintiffs did not pay him the contracted for deposit and that the individuals who acted as his agents in his dealings with the Plaintiffs did not, in fact, work with him.

74. Defendant Hernandez's defamatory statements inflicted serious damage on the Plaintiffs' reputations in the entertainment industry.

75. Defendant Hernandez's defamatory statements have caused the Plaintiffs to suffer increasingly diminishing rates of ticket sales and of presales of VIP tables for other events, including a key calendar event set for New Year's Eve of 2018, thereby crippling the third and fourth quarter efforts of the Plaintiffs and impacting 2019 first quarter revenue and decreasing capital on hand for development and marketing to create revenue in 2019 quarters two through four.

76. Defendant Hernandez's defamatory statements have negatively impacted the Plaintiffs' ability to engage opening acts for other events, to secure VIP table sales, and to engage investors and promoters.

77. Plaintiff Hits Before Fame principal Mr. Tesfalidet has since been forced to deactivate his Instagram account due to negative comments instigated by Defendant Hernandez's defamatory statements.


**COUNT I**
**BREACH OF CONTRACT**
**(Defendant Hernandez)**

The Plaintiffs hereby reference and incorporate paragraphs 1 through 77 above, and further state as follows:

78. Pursuant to the Agreement referred to in Paragraph 21, above, the Plaintiffs paid the sum of $20,000.00 to the Defendant Hernandez in exchange for the promise of Defendant Hernandez to deliver a live musical performance on March 23, 2018, at Echostage, located at 2135 Queens Chapel Rd NE Washington, D.C. 20018.

79. By mutual agreement, the Plaintiffs and Defendant Hernandez rescheduled the Event from March 23, 2018, to October 28, 2018, and increased the payment to Defendant

14

Hernandez from $20,000.00 to $60,000.00.

80. Despite the Plaintiffs' complete performance of bargained for duties, including payments by the Plaintiffs to Defendant Hernandez in the total amount of $58,470.00 which far exceeded the $30,000.00 advance payment required, as well as heavy investment in reliance upon Defendant Hernandez's promises, Defendant Hernandez refused to perform his duties under the Agreement.

81. Defendant Hernandez's failure to perform as promised constitutes a material breach of the Agreement.

82. As a direct and proximate result of the Defendant Hernandez's breach of contract, the Plaintiffs have suffered and continue to suffer substantial pecuniary losses of not less than $300,000.00, to be determined with specificity at trial.

**COUNT II**
**CONVERSION**
**(Defendants Ehigiator, Supers and Jordan)**

The Plaintiffs hereby reference and incorporate paragraphs 1 through 82 above, and further state as follows:

83. The Defendants Ehigiator, Supers and Jordan, each held themselves out, at various times pertinent hereto, to be agents of Defendant Hernandez with the authority to receive money on Defendant Hernandez's behalf.

84. On or about October 28, 2017, as referenced in Paragraph 17, above, Defendant Ehigiator received the sum of $3,500.00 from the Plaintiffs which as intended as a payment toward Defendant Hernandez's fee to perform at the Event.

85. On or about February 12, 2018, as referenced in Paragraph 24, above, Defendant Supers received the sum of $10,000.00 from the Plaintiffs which was intended as a payment

toward Defendant Hernandez's fee to perform at the Event.

86. On or about September 2, 2018, as referenced in Paragraph 32, above, Defendant Jordan received the sum of $44,970.00 from the Plaintiffs which was intended as a payment toward Defendant Hernandez's fee to perform at the Event.

87. In the aftermath of his refusal to perform his obligation under the Agreement and perform at the Event, Defendant Hernandez stated, as referenced in Paragraph 73, above, that he never received any payment due to him under the Agreement and that Defendants Ehigiator, Supers and Jordan were not his agents as contended by the Plaintiffs.

88. If Defendant Hernandez's statements, as referenced in the preceding paragraph, are true, notwithstanding Defendant Hernandez's creation of a promotional video for the Event in concert with Defendant MTA, upon which the Plaintiffs relied, Defendants Ehigiator, Supers and Jordon converted the Plaintiffs' property, i.e., the sum of $58,470.00, to their own personal use, without legal justification or right, to the detriment of the Plaintiffs.

89. As a direct and proximate result of the Defendants Ehigiator, Supers and Jordan's acts of conversion, the Plaintiffs suffered pecuniary losses of $58,470.00 plus consequential damages in an amount to be determined with specificity at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(Defendants Hernandez, Jordan, MTA,**
**Cornish, 1st Call, Ehigiator and Supers)**

The Plaintiffs hereby reference and incorporate paragraphs 1 through 89 above, and further state as follows:

90. The Plaintiffs expended a significant amount of money and a great deal of effort promoting the Event and promoting the Defendant Hernandez's brand through various forms of

media in the months leading up to the date of the Event.

91. The Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers personally, or through their agents, knowingly and willingly encouraged the Plaintiffs to promote the Event and Defendant Hernandez's brand with the expectation of financial benefits for themselves.

92. The Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers all benefited financially from the efforts of the Plaintiffs in promoting Defendant Hernandez's brand.

93. The Defendants Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers knew, or should have known, at various times prior to the event, that Defendant Hernandez did not intend to honor his commitment under the Agreement but none of them took any action to mitigate the Plaintiffs losses prior to the day of the Event.

94. As a direct and proximate result of their collective efforts as delineated above, the Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers were unjustly enriched, at the Plaintiffs' expense and to the Plaintiffs' detriment, in an amount of not less than $300,000.00, to be determined with specificity at trial.


**COUNT IV**
**FRAUD IN THE FIRST DEGREE**
**(Defendants Hernandez, Jordan, MTA,**
**Cornish, 1st Call, Ehigiator and Supers)**

The Plaintiffs hereby reference and incorporate paragraphs 1 through 94 above, and further state as follows:

95. The Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers all engaged in activities, including receiving moneys from the Plaintiffs and delivering to the Plaintiffs materials designed to promote the Event with the intent of misleading the Plaintiffs into thinking that Defendant Hernandez would perform at the Event per the terms of the Agreement.

96.  The Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers all knew, or had reason to believe, that Defendant Hernandez would ultimately not perform his obligations under the Agreement but did not disclose that fact to the Plaintiffs instead allowing them to continue to expend time and financial resources that the Defendants knew, or should have known, would not adhere to the benefit of the Plaintiffs.

97. To the best of the Plaintiffs' knowledge, information and belief, that knowledge based in part on information obtained through news coverage, Defendant Hernandez, together with Defendants Jordan, MTA, 1st Call and Supers, either jointly or severally in various instances, have enacted the same "no-show" scheme on several other promoters.

98. The Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers' actions as delineated in Paragraphs 95 and 96 above constitute a fraud by which the Plaintiffs suffered pecuniary damages in an amount of not less than $300,000.00, to be determined with specificity at trial.

99. The Defendants Hernandez, Jordan, MTA, Cornish, 1st Call, Ehigiator and Supers' fraudulent acts, as referred to in Paragraphs 94 through 97 above, entitle the Plaintiffs to an award of punitive damages in an amount to be determined with specificity at trial.

**COUNT V**
**DEFAMATION**
**(Defendant Hernandez)**

The Plaintiffs hereby reference and incorporate paragraphs 1 through 99 above, and further state as follows:

100.  As referenced in Paragraphs 72 through 77 above, Defendant Hernandez knowingly and intentionally published false and defamatory statements about the Plaintiffs which inflicted significant harm on their reputations and their pecuniary fortunes.

101.  The Defendant Hernandez's defamatory statements as referenced above were malicious in that they were knowingly false and/or they were uttered with reckless disregard of the truth.

102.  Because of the malicious and defamatory nature of the Defendant Hernandez's statements about the Plaintiffs, the Plaintiffs are entitled to compensatory and punitive damages in an amount to be determined with specificity at trial.

**COUNT VI**
**PROMISSORY ESTOPPEL**
**(Defendants Hernandez, Jordan, MTA,**
**Cornish, 1st Call, Ehigiator and Supers)**

The Plaintiffs hereby reference and incorporate paragraphs 1 through 102 above, and further state as follows:

103.  Plaintiffs state further and alternatively that if it is determined at trial that the Agreement referred to above was not an enforceable contract, the Plaintiffs are still entitled to recover damages under the doctrine of Promissory Estoppel.

104.  Each of the named Defendants, explicitly and/or implicitly, promised the Plaintiffs that Defendant Hernandez would deliver a live musical performance on March 23,

2018, later rescheduled to October 28, 2018, at Echostage in Washington, DC., initially for the sum of $20,000.00 and subsequently increased to the sum of $60,000.00.

105.  The Plaintiffs substantially performed their obligation under the Agreement by tendering to Defendant Hernandez through his purported agents all but $1,530.00 of the Defendant Hernandez's full fee for the concert well in advance of the date of the Event, and were fully prepared to tender the balance on the day of the Event.

106.  In addition to the funds tendered to Defendant Hernandez pursuant to the Agreement, the Plaintiffs, in reliance on the promises of the Defendants, expended substantial funds for promotion and collected monies for tickets and tables which ultimately had to be reimbursed to the ticket purchasers by the Plaintiffs.

107.  The Plaintiffs' reliance on the Defendants' promises was reasonable in that it was foreseeable that the Defendant Hernandez would honor his commitment to perform at the Event on October 28, 2018.

108.  Pursuant to the doctrine of Promissory Estoppel, the Plaintiffs are entitled to compensation for all damages incurred by them as a result of the Defendant Hernandez's failure to honor his commitment to perform at the Event.

109.  The particularly egregious nature of the Defendants' collective actions as complained of in the foregoing paragraphs warrants that in addition to compensatory damages, the Plaintiffs are entitled to punitive damages from the all of Defendants in this matter, jointly and severally.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against the Defendants jointly, and severally, in an amount in excess of Three Hundred Thousand Dollars ($300,000.00) in compensatory damages, and in an amount in excess of Five Million Dollars ($5,000,000.00) in punitive damages, plus court costs and legal fees and such other relief as this Court deems just and proper.

Respectfully Submitted,

/s/  Bradley A. Thomas
Bradley A. Thomas, Unified Bar No. 362656
The Law Offices of Bradley Ashton Thomas
1629 K St., N.W., Suite 300
Washington, D.C. 20006-1631
Phone: (202) 289-7574; Fax: (202) 289-5055
batlaw@bradleythomaslaw.com

## JURY DEMAND

Plaintiffs demand a trial by jury on all of the claims in this Complaint for Damages.

/s/  Bradley A. Thomas
Bradley A. Thomas